IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Malik Raheem Hoover,<br>　　　Petitioner, | )<br>)<br>) |
| v. | )　　1:20cv1107 (LO/IDD)<br>) |
| Harold W. Clarke,<br>　　　Respondent. | )<br>)<br>) |

## MEMORANDUM OPINION

Malik Raheem Hoover ("Petitioner" or "Hoover"), a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his January 9, 2015 convictions in the Circuit Court for the City of Hampton, Virginia, for robbery, two counts of abduction, breaking and entering while armed with a deadly weapon, and sexual battery. Commonwealth v. Hoover, Case Nos. CR1300089-00 thru -03, -05. On May 24, 2021, Respondent filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits. Petitioner was advised of his right to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K) to the motion to dismiss, but he has not filed a response. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the respondent's Motion to Dismiss must be granted and the petition will be dismissed with prejudice.

### I. Procedural History

By final order dated January 9, 2015, the Circuit Court of the City of Hampton convicted Petitioner of robbery in violation of Virginia Code § 18.2-58, two counts of abduction in violation of Virginia Code § 18.2-48, breaking and entering while armed with a deadly weapon in violation of Virginia Code § 18.2-90, and sexual battery in violation of Virginia Code § 18.2-

67.4.[1] The circuit court sentenced Hoover to a total of 74 years in prison, with 55 years of the sentence suspended, and 12 months in jail. Hoover filed a petition for appeal in the Court of Appeals of Virginia, in which he raised two claims:

> (a) that the trial court erred by "forcing" Hoover "to undergo trial without an attorney"; and
>
> (b) that the evidence was insufficient to prove that petitioner committed the offenses because "there were no fingerprints or DNA linking Hoover to the crime scene" and "the purported identification of Hoover as an intruder was unreliable."

Hoover v. Commonwealth, Record No. 0069-15-1, (CAV R. at 38, 52, 79, 81). The petition was denied by order dated September 9, 2015, and the denial order was affirmed by a three-judge panel on November 9, 2015. Hoover raised only one assertion of error (he was forced to undergo trial without an attorney) in his petition for appeal to the Supreme Court of Virginia, which refused his subsequent petition on July 7, 2016. Hoover v. Commonwealth, Record No. 151741. (VSCT R. at 20-21, 55).

The federal petition does not indicate that Hoover filed a state habeas petition in either the circuit court or the Supreme Court of Virginia, but it does indicate that he filed a motion in the circuit court after his direct appeal was final. A review of the circuit court record indicates that petitioner filed two motions on January 3, 2019 — a motion for biological testing and a request for appointment of counsel. Counsel was appointed on February 12, 2019, but petitioner subsequently retained counsel, who noted his appearance on March 25, 2019. The circuit court dismissed the motion for biological testing on May 27, 2019. Petitioner also filed a motion to vacate in the circuit court, which was denied on November 30, 2018. Petitioner did not appeal the dismissal.

---

[1] Hoover was tried separately on two counts of use of a firearm in the commission of a felony and was acquitted by a jury sitting the Circuit Court of the City of Hampton on June 6, 2015. Commonwealth v. Hoover, Case Nos. CR13000089-04, -06.

2

This Court's records also establish that petitioner, proceeding pro se, filed a motion on September 28, 2018 (dated September 18, 2018) in this Court seeking appointment of a lawyer to assist him in filing a federal habeas petition. On October 3, 2018, the Court denied the motion and dismissed the civil action without prejudice because the Court lacked jurisdiction. The Court also directed the Clerk to provide Hoover with a § 2254 form, which accompanied the dismissal order. Malik Hoover v. Commonwealth of Virginia, No. 1:18cv1240 (E.D. Va. Oct. 3, 2018).

On August 25, 2020,[2] Petitioner filed the instant petition for a writ of habeas corpus in the United States District Court for the Western District of Virginia, which transferred the case to this Court on September 22, 2020. Hoover v. Clarke, No. 7:20cv00525 (W.D. Va.). The § 2254 petition alleges the following grounds for federal habeas corpus relief:

1. The trial court erred by forcing Hoover to undergo trial without an attorney.
2. The evidence was insufficient to convict Hoover and there was reasonable doubt that he committed the offenses.

## II. Statute of Limitations

A petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). In calculating the one-year period, however, the Court must exclude the time during which properly filed state collateral proceedings pursued by petitioner were pending. See 28 U.S.C. § 2244(d)(2); Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (determining that

---

[2] The Court will use the August 25, 2020 date (which is the date of Petitioner's cover letter and the date he executed the § 2254 petition) as the date of filing for the purposes of this motion because that is the earliest date the petition can be deemed filed. See Houston v. Lack, 487 U.S. 266, 276 (1988).

3

the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts).

Petitioner's state court direct appeal proceedings concluded on July 7, 2016, but are deemed final for federal habeas purposes on October 5, 2016, which is the date his time for seeking a petition for a writ of certiorari to the Supreme Court of the United States expired. See Harris v. Hutchinson, 209 F.3d 325, 328 n.1 (4th Cir. 2000) (AEDPA provides that the one-year period does not commence until the latest of the date when judgment on direct review "became final" or "the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A)). Petitioner therefore had until October 5, 2017, to file his federal habeas petition. Petitioner, however, did not file his federal petition until August 25, 2020 — over three years and ten months after his direct appeal was final for federal habeas purposes. Even if tolled for the motion to vacate, the federal petition was filed over seven months after the federal statute of limitations expired.[3] The § 2254 petition is untimely, therefore, unless the limitations period is tolled. The record establishes that Petitioner is not entitled to statutory or equitable tolling.

*A. Statutory Tolling*

Petitioner did not timely file his federal petition prior to the expiration of the one-year period set forth in AEDPA and is therefore not entitled to statutory tolling during the pendency of that petition. See 28 U.S.C. § 2244(d)(2).

---

[3] The state court record did not contain the motion to vacate. The record included a clerk's note directing a response by the prosecutor, the prosecutor's November 27, 2018 response, and the circuit court's order dismissing the motion to vacate. Any tolling of the statute of limitations by the motion to vacate would therefore have only tolled the statute of limitations through December 30, 2018, which was the last day petitioner could have noted an appeal from the dismissal of the motion to vacate. The motion to vacate was dismissed on November 30, 2018. The federal statute of limitations would have started to run on December 31, 2018, and would have lapsed on December 31, 2019, which was over seven months prior to when petitioner actually filed his federal petition on August 25, 2020.

4

*B. Equitable Tolling*

The United States Supreme Court has held that a habeas petitioner may be permitted to file a federal habeas petition out of time if he can establish his entitlement to equitable tolling, which requires that the petitioner show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. See Holland v. Florida, 560 U.S. 631, 649 (2010) (citation omitted). A petitioner asserting equitable tolling "bears a strong burden to show specific facts" that demonstrate fulfillment of both elements of the test, Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Brown v. Barrow, 512 F.3d 12304, 1307 (11th Cir. 2008)), and generally is obliged to specify the steps he took in diligently pursuing his federal claim. Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001). In addition, the petitioner must "demonstrate a causal relationship between the extraordinary circumstance on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000). It is widely recognized that equitable tolling is to be applied only infrequently. Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (resort to equity is "reserved for those rare instances where - due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.").

Hoover's assertion of mental health issues, alone, amounts to little more than a "bare assertion" that he "suffer[ed] from some mental impairment, [which] 'without more, is insufficient to justify equitable tolling.'" Robinson v. Hinkle, 610 F. Supp. 2d 533, 539 (E.D. Va. 2009), appeal dismissed, 357 F. Appx. 517 (4th Cir. 2009)) (quoting Lawrence v. Florida, 421

5

F.3d 1221, 1227 (11th Cir. 2005)); see also Long v. Deep Meadow Corr. Ctr., No. 3:18cv049, 2018 U.S. Dist. LEXIS 119036 *8 (E.D. Va. July 16, 2018) (finding "bare allegations that [petitioner] suffers from PTSD, depression, and anxiety do not demonstrate a causal connection to his inability to file on time"). "Rather, a causal link between the mental condition and untimely filing is required." Ata v. Scutt, 662 F.3d 736, 741-42 (6th Cir. 2011) (collecting cases). Moreover, "[a] petitioner's ability to make other legal filings during the alleged period of his incompetency counsels strongly against allowing equitable tolling of a petitioner's federal habeas petition." Robinson, 610 F. Supp. 2d at 540; see also Price v. Lewis, 119 F. App'x 725, 726-27 (6th Cir. 2005) (holding that a petitioner able to file legal papers during period of alleged incapacity not entitled to equitable tolling). "A claim of continuing psychiatric care is insufficient to trigger equitable tolling." Robinson, 610 F. Supp. 2d at 542 (citations omitted).

In his § 2254 petition, Petitioner alleges that mental issues prevented him from filing his federal petition in a timely manner. [Dkt. No. 1 at 15-16]. Hoover does not explain what his mental health or psychiatric issues were, when they were diagnosed, and when he became able to "appreciate [his] legal situation." [Id.]. More importantly, he does not address why he was able to seek appointment of counsel for the purposes of filing a federal habeas petition in September, 2018, and pursue other matters in the circuit court. See, supra at 3, and at 4 note 3. Hoover's ability to pursue post-conviction motions in the circuit court and his request in September 2018 for this Court to appoint counsel for him to file a habeas corpus petition establishes he was aware of his need to file a federal petition almost two years prior to when he actually did file it. Importantly, the claims he is raising in his § 2254 petition were known to him in September 2018 because they were raised on direct appeal in 2015 and 2016. In sum, the record does not

6

demonstrate that Hoover was diligent or that whatever mental health issues he may have had (or still have) prevented him from filing his federal petition in a timely manner.

## C. *Actual Innocence*

Actual innocence may also allow review of an untimely habeas petition. McQuiggin v. Perkins, 569 U.S. 383, 392 (2013). However, "claims of actual innocence are rarely successful," Schlup v. Delo, 513 U.S. 298, 324 (1995), and "should not be granted casually." Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998). The standard of review for demonstrating innocence under Schlup is a demanding one. It requires that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" McQuiggin, 569 U.S. at 401 (quoting Schlup, 513 U.S. at 316).

In order to demonstrate the fundamental miscarriage of justice exception to AEDPA's statute of limitations, a petitioner must present *new* evidence to support his claim of actual innocence, and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327 (emphasis added).[4]

---

[4] The victim met petitioner when he came to her home with a friend of the victim's on Saturday November 10, 2012. (6/5/14 Tr. at 118-20). Petitioner was with a female, and he and the female left after about 45 minutes to an hour. (Id. at 120-21). Petitioner, accompanied by another male, showed up at the victim's home around midnight on November 11, 2012. The victim would not allow him to enter her home and the two argued. Petitioner cursed at her and told her he would be "back later," and had "something" for the victim. (Id. at 122-23). The victim woke up about 4:00 a.m., and the petitioner and another male were in her bedroom, standing above her, and saying "[w]ake up, bitch. Get out of bed. We have a gun." (Id. at 124). The petitioner and the other male found the victim's younger sister and brought her to the victim's room, and then tied the victim's arms behind her back with ribbon and "duct-taped" her mouth. (Id. at 126). The petitioner and the other male then went around the house and took televisions, jewelry, and other items of value. The petitioner struck the victim, and also sexually assaulted he by rubbing her vagina. (Id. at 126-28). The victim recognized the petitioner's voice and his eyes, and remembered that he had told her his birthday was December 12 when he was at her home on Saturday, November 10, 2012. (Id. at 135-36).

The petitioner was interrogated by the police on November 17, 2012, and provided two different versions of his whereabouts at the time of the offense. After the detective left the interrogation room, the petitioner told his father "they got me." (Id. at 158-60, 161). Later, while alone in the interview, the petitioner said, "Why the f___ did I do that s___ with that idiot, anyway?" (Id. at 167).

The trial court records confirm the petitioner's birth date is December 12. (R. at 1-7, 33, 37, 174-75, 185).

7

Hoover has not proffered any "new reliable evidence" demonstrating a colorable claim of actual innocence. Coleman v. Thompson, 501 U.S. 722, 730 (1991); Sharpe v. Bell, 539 F.3d 372, 377 (4th Cir. 2010). Instead, he offers legal arguments that the evidence was insufficient and that a witness's identification of him is unreliable. Hoover has failed to satisfy Schlup's high standard or demonstrate that his untimely claims are entitled to be reviewed under McQuiggin. Accordingly, Hoover's petition is time-barred, and must be dismissed.

### III. Exhaustion and Procedural Bar

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. See 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia must have presented the Supreme Court of Virginia with the same factual and legal claims raised in his § 2254 petition. See, e.g., Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002).

Even if the merits of a petitioner's federal habeas claims have not been presented to the Supreme Court of Virginia, his claims are deemed exhausted if they would be found to be defaulted if the petitioner presented his claims in a subsequent state habeas petition. Hedrick v. True, 443 F.3d 342, 364 (4th Cir. 2006) (claim is "technically" exhausted if "a state procedural rule would bar consideration of the claim [if it] was later presented to the state court") (citing Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).[5] Thus, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and

---

[5] If Petitioner attempted to reassert the defaulted claims in a second state habeas petition, the claims would be found to be either successive and barred by Virginia Code § 8.01-654(B)(2), untimely under the state habeas statute of limitations under § 8.01-654(A)(2), or barred under both statutes.

8

sentence, and ... prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." Id. at 162.

Federal courts may not review barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman, 501 U.S. at 753-54; Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). A court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).

Here, respondent admits that, Ground 1, asserting he was forced to go to trial without counsel, is exhausted. [Dkt. No. 12 at 5-6]. Respondent, however, asserts that Ground 2, alleging insufficient evidence, is exhausted and defaulted because petitioner did not assert the sufficiency ground in his petition for appeal to the Supreme Court of Virginia on direct appeal. [Id. at 6]. The records establish that this claim was not asserted in the petition for appeal to the Supreme Court of Virginia and is, therefore, exhausted and defaulted for purposes of federal habeas review.

Petitioner has not established either cause or prejudice to excuse his default, and the record does not indicate either cause or prejudice. Further no miscarriage of justice occurred in this matter. See, supra at 7-8. Consequently, even if the § 2254 petition had been timely filed, the default in state habeas precludes federal review of the claims in Petitioner's § 2254 petition.

### IV. Standard of Review

Moreover, timeliness and defaults aside, Hoover's claims have no merit under the standards set forth in the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA), which abolished *de novo* review in federal habeas cases and requires deference to a state court's

9

decision on the merits unless that decision was (1) contrary to, or an unreasonable application of a clearly established Supreme Court decision, or (2) based on an unreasonable determination of facts. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 403-13 (2000). Under 28 U.S.C. § 2254(e)(1), a federal court must presume a state court's determination of facts is correct unless rebutted by clear and convincing evidence. Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) (factual issue determined by state court "shall be presumed to be correct"); see also Sumner v. Mata, 455 U.S. 591, 591-93 (1983) (per curiam) (statutory presumption of correctness applies to state appellate court's rendition of historical facts).[6] "The required deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006). The AEDPA standard is "difficult to meet," and a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal citations and quotations omitted).

Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The standard of reasonableness is an objective one. Id. at 410. The focus of a federal court under this standard "is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F. Supp. 152, 156 (E.D. Va. 1997). The Fourth Circuit recently stated that the

> deference under § 2254 ensures "state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding." Harrington v. Richter,

---

[6] In federal habeas, a federal court reviewing a state conviction for sufficiency of the evidence views the evidence in "the light most favorable to the prosecution" and the court presumes that if there were any conflicts in the evidence that "the trier of fact" resolved the conflicts in the evidence in "favor of the prosecution." Jackson v. Virginia, 443 U.S. 307, 319, 326 (1979).

10

> 562 U.S. 86, 103, (2011). Accordingly, we may grant habeas relief on claims adjudicated on their merits in state court only if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see also Cummings v. Polk, 475 F.3d 230, 237 (4th Cir. 2007).

Sigmon v. Stirling, 956 F.3d 183, 191 (4th Cir. 2020).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). A state court decision is unreasonable only if it is so erroneous that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e] [Supreme] Court's precedents.'" Harrington v. Richter, 562 U.S. 86, 101 (2011)).

Furthermore, "'a determination on a factual issue made by a State court shall be presumed correct.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008) see Landrigan, 550 U.S. at 473-74 (citing 28 U.S.C. § 2254(e)(1)).

Because the Court of Appeals decision denying Brown's petition for appeal is the last reasoned state court opinion, this Court applies the "look through" doctrine to the last reasoned decision addressing the claim. See Wilson v. Sellers, 138 S. Ct. 1188, 1194 (2018) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (federal habeas courts should presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground").

11

*A. Ground 1*

In its order rejecting allegation (a), the Court of Appeals of Virginia ("Court of Appeals") carefully reviewed the trial record and concluded, much like the trial court, that Hoover's "'conduct tended to unreasonably and unjustifiably delay trial' and that he effectively waived his right to counsel." (CAV R. 81). The Court of Appeals acknowledged the well-established principle that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense unless he was represented at trial by an attorney," (Id. at 79) (quoting Lemke v. Commonwealth, 241 S.E.2d 789, 791 (1978)), and found that Hoover's "actions in repeatedly seeking appointment of a new attorney shortly before his scheduled trial date had the effect of postponing [his] trial for more than a year." (Id.). The Court of Appeals summarized the record regarding the appointment and withdrawal of counsel.

> Counsel originally was appointed by the juvenile and domestic relations district court on November 19, 2012. After the charges were certified and appellant was indicted by a grand jury, the trial court appointed counsel for appellant on January 7, 2013. The matter was scheduled for a jury trial to begin on June 5, 2013. On May 24, 2013 appellant's attorney, Ryan Ruzic, attempted to move to withdraw at appellant's request because he wanted to retain a different attorney. The trial court continued the matter to June 14, 2013 to give appellant time to retain an attorney, but he failed to do so. Trial court then granted Ruzic's motion to withdraw due to a "breakdown of communications," and appointed Nicholas Hobbs to represent appellant. A September 19, 2013 trial date was set. Upon appellant's motion, filed days before the scheduled trial, the case was continued because appellant had just disclosed to Hobbs the existence of an alibi witness. A February 20, 2014 trial date was set. Hobbs moved to withdraw because appellant had requested him to do so. At a hearing on October 25, 2013, appellant stated he had a "conflict of interest" with Hobbs and asked that another attorney be appointed for him. The trial court denied the motion. At a February 22, 2014 hearing, Hobbs again moved to withdraw because appellant would not cooperate with him. The trial court granted the motion and appointed William Boyle to represent appellant. *The trial court advised appellant that Boyle would be his last court-appointed attorney, and if he refused to cooperate with Boyle, appellant would be proceeding pro se.* A June 5, 2014 trial date was set. On May 29, 2014, Boyle moved to withdraw at appellant's request. Appellant had refused to communicate or cooperate with Boyle. Appellant asked the trial court to appoint another attorney to represent him. In response to questioning by the trial court, appellant indicated familiarity

12

> with the criminal justice system and the charges he faced. Appellant also acknowledged that he had been advised in February 2014 that Boyle would be his final attorney in the matter. The trial court found it had complied with Code § 19.2-157, concluded that *appellant's actions* had amounted to a de facto waiver of his right to counsel, granted Boyle's motion to withdraw, refused to continue the trial, and appointed Robert Harris to act as standby counsel at trial.

(CAV R. at 80-81) (emphasis added).[7]

Virginia, like many federal circuits, allows waiver by conduct. The last reasoned decision of the state court on this matter was the denial order by the Court of Appeals. Under AEDPA, that is the decision that will be examined. Wilson, 138 S. Ct. at 1194.

> For purposes of § 2254(d)(1), the term "'clearly established [f]ederal law'... refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). Thus, a state-court decision is contrary to clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [its] precedent." Id. at 405-06.

Vreeland v. Zupan, 906 F.3d 866, 875 (10th Cir. 2018). In situations where "none of" of the United States Supreme Court "cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court." Woods v. Donald, 575 U.S. 312, 317 (2015) (quoting Lopez v. Smith, 574 U.S. 1, 6 (2014))). Here, the Fourth Circuit has already held that "[t]he Supreme Court has not established precise guidelines for determining whether a waiver is knowing and intelligent." United States v. Ductan, 800 F.3d 642, 649 (2015).

---

[7] The record reveals that stand-by counsel was appointed to assist the petitioner during his trial, and that stand-by counsel sat at counsel table with the petitioner. The trial court allowed the petitioner to confer with stand-by counsel and thereafter explained to the petitioner how he needed to conduct himself when presenting argument and examining witnesses, and that if he needed to consult with stand-by counsel during the trial to let the court know and it would take a recess. (6/5/14 Tr. at 9-11, 15). The petitioner conferred with stand-by counsel during voir dire (Id. at 50, 61, 62, 68) opening arguments (Id. at 98), and an objection. (Id. at 181). Stand-by counsel was also present with the petitioner on day two of the trial, June 6, 2014, when the jury was instructed and closing arguments were heard. 96/6/14 Tr. at 2). Stand-by counsel also assisted the petitioner at an August 22, 2014 hearing for a continuance, and at sentencing on January 9, 2015.

Ductan distinguished its earlier opinion in United States v. Gallop, 838 F.2d 105, 109 (4th Cir. 1988), which held that "[a] refusal without good cause to proceed with able appointed counsel is a 'voluntary' waiver."

> Gallop ... predated the "clear and unequivocal" requirement ... adopted in Fields [v. Murray, 49 F.3d 1024, 1028 (4th Cir. 1995) (en banc)]. Thus, although we have continued to rely on Gallop for its approach to Faretta inquiries and the determination whether a waiver is "intelligent, knowing, and voluntary," it does not provide correct guidance on whether a waiver of counsel is clear and unequivocal.
>
> In this case, there was no clear and unequivocal waiver of counsel or election of self-representation. Because neither Gallop nor the out-of-circuit cases cited by the government account for this post-Fields requirement, we do not find them controlling or persuasive here, except as they relate to the issue of whether Ductan's waiver was intelligent, knowing, and voluntary.

Ductan, 800 F.3d at 652.[8] Ductan observed that since Fields, it has "consistently held that as between counsel and self-representation, counsel is the 'default position' unless and until a defendant explicitly asserts his desire to proceed pro se." Id. at 650.

Ductan, however, does not control this case for several reasons. First, Ductan is a direct appeal involving a federal defendant. Second, as Ductan admits there, is no controlling Supreme Court precedent "for determining whether a waiver is knowing and intelligent." Id. at 649. Third,

---

[8] Although the Fourth Circuit disavowed the implied waiver aspect of Gallop in Ductan, it did not mention its prior opinion in Sampley v. Attorney Gen. of North Carolina, 786 F.2d 610 (4th Cir. 1986) (4th Cir. 1986). While Sampley concerned retained counsel, the Fourth Circuit stated that

> a defendant has no constitutional right to dictate the time, if ever, at which he is willing to be tried by simply showing up without counsel, or with allegedly unsatisfactory counsel, whenever his case is called for trial, see Ungar v. Sarafite, 376 U.S. 575 (1964), or by objecting that counsel then retained or assigned is not presently 'counsel of his choice,' see Morris v. Slappy, 461 U.S. 1 (1983). The limit of the right is necessarily found in the countervailing state interest against which the sixth amendment right provides explicit protection: the interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of 'assembling the witnesses, lawyers, and jurors at the same place at the same time,' Morris v Slappy, 461 U.S. at 11.

786 F.2d at 613. Sampley also notes that a trial court has the discretion to consider if a request to obtain counsel, after the defendant has failed to avail himself of the fair opportunity to obtain counsel, is a "'transparent ploy for delay.'" Id. (citing Morris, 461 U.S. at 13).

Ductan acknowledges that other circuits had held that the right to counsel may be relinquished either intentionally or unintentionally, id. at 652 (citing United States v. Leggett, 162 F.3d 237, 249-50 (3d Cir. 1998). Fourth, it is abundantly clear that fairminded jurists have relied on implied waivers just as the Court of Appeals did in petitioner's case. See Boyd v. Stonebreaker, No. 1:19-3053, 2020 U.S. Dist. LEXIS 253150, *33 (D.S.C. October 13, 2020) (acknowledging Ductan does not rely on binding Supreme Court precedent and, applying AEDPA, concludes that "'fairminded' jurists could also conclude that Petitioner's pretrial conduct constituted a waiver of his right to counsel" and noting several federal circuits "have held that defendants can waive their right to counsel explicitly, by conduct, or by forfeiture") (citing United States v. Thomas, 357 F.3d 357, 362 (3d Cir. 2004); United States v. Goldberg, 67 F.3d 1092, 1100 (3d Cir. 1995); United States v. McLeod, 53 F.3d 322, 325 (11th Cir. 1995); United States v. Oreye, 263 F.3d 669, 670 (7th Cir. 2001); United States v. Kneeland, 148 F.3d 6, 12 (1st Cir. 1998)).[9]

Lastly, for district courts reviewing state criminal convictions in federal habeas under AEDPA, the question is whether the state court decision was contrary to or an unreasonable application of the Supreme Court's decision, and not circuit precedent. See Toghill v. Clarke, 877 F.3d 547, 556 (4th Cir. 2017) (citing Bustos v. White, 521 F.3d 321, 325 (4th Cir. 2008) ("[I]t is Supreme Court precedent, and not Fourth Circuit precedent, to which we look in applying the AEDPA standard of review.")).

---

[9] Ductan also does not discuss the Supreme Court's decision in Taylor v. United States, 414 U.S. 17 (1973), in which the Supreme Court held that the petitioner *impliedly waived* his constitutional right to be present at trial by voluntarily absenting himself. Id. at 20; see also id. ("there can be no doubt whatever that the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward." (quoting Illinois v. Allen, 397 U.S. 337, 349 (1970) (BRENNAN, J., concurring)). Supreme Court precedent clearly allows for waiver of important constitutional rights based on a defendant's conduct. As Vreeland noted, "the [Supreme] Court reached that conclusion despite the fact that the trial court never expressly warned the petitioner that "'the trial would continue in his absence.'" 906 F.3d at 880 (quoting Taylor, 414 U.S. at 19).

15

In Vreeland, the Tenth Circuit reviewed United States Supreme Court precedent on waiver of the right to counsel and found that "the Supreme Court has never addressed whether a defendant can impliedly waive the right to counsel via his or her conduct, as opposed to by an express written or verbal statement," and then concluded that the implied waiver by conduct found by the state appellate court's denial of relief in that case was "not contrary to clearly established federal law." Vreeland, 906 F.3d at 878.[10] Vreeland also held that the state appellate court's decision was not an unreasonable application of United States Supreme Court precedent because it was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement." Vreeland, 906 F.3d at 878 (citing Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017)).[11]

The Ninth Circuit considered a case similar to the petitioner's in the context of a direct appeal by a federal defendant and found no error by the district court.

---

[10] See United States v. Garey, 540 F.3d 1253, 1263, 1265 (11th Cir. 2008) ("It is important to remember that Faretta's discussion of the right to self-representation presupposed a cooperative defendant willing to engage in reciprocal dialogue with the court. The Supreme Court has never confronted a case in which an uncooperative defendant has refused to accept appointed counsel or engage in a colloquy with the court. Consequently, the Court has never been asked to determine whether a defendant may waive counsel without making an explicit, unqualified request to represent himself" and holding that a valid waiver of counsel can "occur not only when a cooperative defendant affirmatively invokes his right to self-representation, but also when an uncooperative defendant rejects the only counsel to which he is constitutionally entitled, understanding his only alternative is self-representation with its many attendant dangers.").

[11] See Carruthers v. Mays, 889 F.3d 273, 291-92 (6th Cir. 2018) ("given AEDPA deference, Carruthers is not entitled to habeas relief under § 2254 based on his claim that the state trial court unconstitutionally deprived him of the right to counsel by requiring him to represent himself during the capital murder trial" as a result of his pre-trial conduct where he refused to meet with his appointed counsel that the state court found was evidence that he was "manipulating his right to counsel to delay trial proceedings"). In pointing out the difference between applying AEDPA deference and circuit precedent, Carruthers noted that its circuit precedent required specific warnings that were inapplicable under AEDPA. The Sixth circuit noted that while its circuit precedent required "[f]ormal warnings" "'of the dangers and disadvantages of self-representation'" before a defendant waived his right to counsel, id. at 291, and that although no such warning was given by the state trial court warning "Carruthers about the effect of 'choosing' to represent himself by refusing to cooperate with" appointed counsel and that "Carruthers ... would be expected to abide by Tennessee's rules of evidence and procedure" id., "no clearly established Supreme Court precedent dictates that formal warnings are required, even in the context of a defendant's waiving his right to counsel ... as would be required to overturn the state court's decision under AEDPA." Id. (citing Swiger v. Brown, 86 F. App'x 877, 881-82 (6th Cir. 2004)).

16

> In United States v. Sutcliffe … a defendant had "manipulated the proceedings and his relationships with five appointed lawyers so as to be able to claim that he wants to be represented by counsel while at the same time making it impossible for any competent lawyer to carry out his professional responsibilities." 505 F.3d 944, 955 (9th Cir. 2007). We concluded that in light of the defendant's manipulative behavior, "the district court did not err in finding that Defendant knowingly and intelligently waived his right to counsel through his conduct." Id. at 956; see also United States v. Kneeland, 148 F.3d 6, 12 (1st Cir. 1998) (holding that defendant waived his right to counsel "not because he ever stated, in so many words, that he did not want attorney representation," but because he demonstrated waiver by conduct in dismissing several court-appointed attorneys).

United States v. Turner, 897 F.3d 1084, 1103 (9th Cir. 2018).

To be sure, the Supreme Court has expressly noted that the defendant's conduct is part of the facts and circumstances considered in determining whether a waiver of a defendant's right to counsel was knowing and intelligent holding that the waiver "must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, *and conduct of the accused.*'" Edwards v. Arizona, 451 U.S. 477, 482 (1981) (citation omitted) (emphasis added); see also Moody v. Thomas, 89 F. Supp. 3d 1167, 1217 (N.D. Ala. 2015) ("[T]he Sixth Amendment right to counsel "'is a shield' and 'should not be used as a sword with the purpose of obstructing the orderly procedure of the courts or to interfere with the fair administration of justice.'"), aff'd sub nom. Moody v. Comm'r, Alabama Dep't of Corr., 682 F. App'x 802 (11th Cir. 2017).

The Tenth Circuit has observed that in situations similar to what occurred during the circuit court proceedings in petitioner's case, that a defendant's conduct may serve as a basis for the waiver of his right to counsel, warning

> that "the right to make a knowing and intelligent waiver of the right to counsel does not grant the defendant license to play a cat and mouse game with the court, or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel." United States v. Allen, 895 F.2d

17

> 1577, 1578 (10th Cir. 1990) (quotation marks omitted).... [Concluding] that a defendant may waive his right to counsel by his conduct, particularly when that conduct consists of tactics designed to delay the proceedings. See [United States v.] Willie, 941 F.2d [1384,] 1389-91[(10th Cir. 1991)].

United States v. Hughes, 191 F.3d 1317, 1323 (10th Cir. 1999); see also United States v. Mitchell, 777 F.2d 248, 258 (5th Cir. 1985) ("no matter how fundamental the right to counsel may be, it may not be used as a means of delaying or trifling with the court").[12]

In short, there was no good cause to appoint new counsel and the trial court did not abuse its discretion in requiring a clearly manipulative defendant from proceeding pro se. Consistent with the cases from several circuits, the trial court made sure the petitioner's "eyes were open" as to the nature of the charges and punishments he faced, the disadvantages of proceeding without counsel, and the petitioner had known for months that if he discharged his counsel again that he would have to proceed pro se.[13] See United States v. Goldberg, 67 F.3d 1092, 1100 (3d Cir. 1995) ("Once a defendant has been warned he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed pro se, and thus, as a waiver of the right to counsel."). The trial court also took the prudent step of appointing stand-by counsel to assist the petitioner throughout the trial and the record establishes that the petitioner was allowed to freely consult with stand-by counsel when he had questions.

---

[12] Other circuit courts have also held that conduct can be the basis for finding waiver of the right to counsel. See, e.g., United States v. Turner, 897 F.3d 1084, 1103 (9th Cir. 2018) ("a defendant may waive the right to counsel by engaging in conduct that is 'dilatory and hinders the efficient administration of justice'") (quoting United States v. Thompson, 587 F.3d 1165, 1174 (9th Cir. 2009) and citing United States v. Mesquiti, 854 F.3d 267, 272 (5th Cir. 2017) ("A defendant can waive his right to counsel implicitly, by his clear conduct, as well as by his express statement.")); United States v. Oreye, 263 F.3d 669, 670 (7th Cir. 2001) (although a defendant never says he wants to proceed pro se, the "defendant can waive his right to counsel through conduct as well as words.... If you're given several options, and turn down all but one, you've selected the one you didn't turn down."); United States v. Kneeland, 148 F.3d 6, 12 (1st Cir. 1998) ("We answer affirmatively not because he ever stated, in so many words, that he did not want attorney representation, but because he explicitly dismissed his third court-appointed attorney in the face of ample warnings by the district court that he would not be provided a fourth appointed counsel.").

[13] The petitioner's eyes were wide open from his arrest on November 17, 2012, when he told his father "they got me."

18

The Court of Appeals decision denying relief on Ground 1 was not contrary to federal law or and unreasonable application of federal. Accordingly, it will be dismissed.

*B. Ground 2*

As noted, see, supra at 3-8, 9, Petitioner's sufficiency challenge is time barred and defaulted. Even if not time-barred and defaulted, his claim has no merit. In Jackson v. Virginia, 443 U.S. 307 (1979), the court provided the analytical framework to use in reviewing a claim that the evidence was insufficient to sustain a conviction.

> We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 — if the settled procedural prerequisites for such a claim have otherwise been satisfied — the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof beyond a reasonable doubt.
>
> ....
>
> ... Under the standard established in this opinion as necessary to preserve the due process protection recognized in Winship, a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

Id. at 324, 326. Petitioner does not meet the standard. Petitioner's argument regarding the victim's credibility is foreclosed by Jackson, and his argument that there was no corroborating evidence (fingerprints or DNA) is also foreclosed by Jackson because the evidence presented precludes a finding that no reasonable finder of fact could have convicted him of robbery. In determining the ends of justice exception to his default of the sufficiency claim did not apply, the Court of Appeals found that

> [t]he Commonwealth's evidence proved that on November 11, 2012, [Hoover] and an accomplice broke into the home of seventeen-year-old B.F. At the time, B.F. was home alone with her nine-year-old sister Z.H. The assailants abducted the girls from their beds and restrained them while they ransacked the home. During the incident, appellant sexually assaulted B.F. Although the assailants wore masks, B.F. was able to identify appellant as one of the perpetrators. B.F.

19

knew appellant and had been involved in an argument with him in her home hours before the incident occurred.

(CAV R. at 82).[14] The evidence also contained Hoover's admission after his arrest that "they got me," as well as his statement of remorse for following the "idiot." See, supra at note 4. Even if not barred by the statute of limitations and defaulted, Hoover's sufficiency claim has no merit.

### IV. Conclusion

For the foregoing reasons, the motion to dismiss [Dkt. No. 10] the petition must be granted, and the petition must be dismissed with prejudice and an appropriate Order shall issue.[15]

Entered this 31 day of Jan., 2022.

Alexandria, Virginia

/s/ LOG
Liam O'Grady
United States District Judge

---

[14] See Weeks v. Angelone, 176 F.3d 249, 270 (4th Cir. 1999) (Virginia's contemporaneous objection rule is an adequate and independent state court procedural rule barring federal review of a claim because it is firmly established, and regularly and consistently applied) (citing Va. Sup. Ct. R. 5:25); Kent v. Kuplinski, 702 F. App'x 167, 169 (4th Cir. 2017) (applying Court of Appeals of Virginia's contemporaneous objection rule, Va. Sup. Ct. Rule 5A:18, to bar federal habeas review of a sufficiency of the evidence claim).

[15] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.